**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-16-0000415**
**14-DEC-2016**
**10:43 AM**

NO. CAAP-16-0000415

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF DT

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 13-00013)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Fujise and Ginoza, JJ.)

Father-Appellant (Father) appeals from the Family Court of the First Circuit's (Family Court's) May 6, 2016 Order Terminating Parental Rights. The Family Court granted the Department of Human Services' (DHS) Motion to Terminate Parental Rights, in which DHS moved to terminate Father's parental rights to his child, DT.[1]

Father argues that the Family Court erred in terminating his parental rights (1) based on clearly erroneous findings that (a) he is unable and unwilling to provide a safe home for DT and will not become able or willing to do so within a reasonable period of time, (b) DHS provided him with a reasonable opportunity to reunify with DT, and (c) his November and December, 2015 relapses from sobriety posed a risk of harm to DT; and (2) after the court erroneously (a) denied his motion to continue trial and (b) prevented him from asking Dr. Aimee Franson (Dr. Franson) if his psychological issues prevented him from providing DT with a safe home. Related to these arguments

---

[1] The Honorable Karen M. Radius issued the Order Terminating Parental Rights.

is Father's contention that in the court's Findings of Fact and Conclusions of Law, Findings of Fact (FOF) 81, 96, 100, 111, 112, 114-18, 129, and 137 are clearly erroneous.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Father's points of error as follows:

1a.   FOF 96, 114, 115, 117, and 118[2] are not clearly erroneous.  Substantial evidence in the record on appeal shows that although Father completed some services and made progress, he did not participate in services consistently, apply what he learned in his domestic violence program, or maintain sobriety; and his pattern of relapsing and aggressive behaviors posed a risk of harm to DT.  At the time of trial, there remained additional safety concerns, including Father's lack of a bond

---

[2]   FOF 96, 114, 115, 117, and 118 provide:

96.   At trial, Father admitted to his November 2015 and December 2015 relapses.  However, he did not acknowledge that he has a substance abuse problem, i.e. alcohol.  Instead, Father testified that he can stop drinking unlike people who have a problem. Drawing all reasonable inferences from the credible evidence, Father's testimony shows that Father has little insight into his problems with consuming alcoholic beverages.

. . . .

114.   Despite his participation in services, Father has not developed any insight into his problems that placed [DT] at risk for threatened harm, and that prevents him from providing a safe home for [DT].

115.   Even though Father participated in services, he has not demonstrated that he has addressed his problems that prevent him from providing a safe home for [DT].

. . . .

117.   Father is not presently willing and able to provide [DT] with a safe family home, even with the assistance of a service plan.

118.   It is not reasonably foreseeable that Father will become willing and able to provide [DT] with a safe family home, even with the assistance of a service plan because even if Father were to suddenly change his long standing pattern of behavior, there is no likelihood that he would sufficiently resolve his problems at any identifiable point in the future.

(Format altered.)

with and inability to redirect DT, failure to obtain housing, arrests for assault, unresolved mental health issues, and poor judgment in his relationship with DT's mother. There were also concerns about Father's failure to develop insight into his mental health problems, meaning an awareness of his level of functioning that would enable him to improve. In short, Father did not progress sufficiently in the three years since DHS had assumed foster custody of DT to demonstrate that he could provide DT with a safe family home. See HRS § 587A-33(a)(2) (Supp. 2015) (providing for a maximum of two years from the date the child enters foster care in which a parent may demonstrate a willingness and ability to provide a safe home).

This court declines to review the Family Court's determination that some of Dr. Franson's testimony regarding Father's ability to provide a safe home was not credible in light of Father's history. See Child Support Enforcement Agency v. Doe, 98 Hawai'i 58, 65, 41 P.3d 720, 727 (App. 2001) ("it is the right of the trier of fact to determine credibility and to weigh evidence") (citation and internal quotation marks omitted).

1b. FOF 116[3] and 129[4] are not clearly erroneous. Although DHS failed to increase Father's visitation time with DT from three to six hours per week -- which Dr. Franson recommended to improve Father's bond with DT -- substantial evidence showed that even with his existing visitation schedule, Father did not consistently interact with, redirect, or establish a routine for DT. Father's hands-on parenting services ended when he threatened the worker supervising him. His failure to adequately address his alcohol-use disorder and aggressive behavior prevented him from progressing to unsupervised visits. Based on this evidence, it does not appear that Father was prejudiced by DHS's failure to increase his visitation time.

---

[3] FOF 116 provides that "[u]nder the circumstances presented by the case, Father was given every reasonable opportunity to effect positive changes to provide a safe family home and to reunify with [DT]."

[4] FOF 129 provides in relevant part, "[u]nder the circumstances presented by this case, DHS has exerted reasonable efforts to reunify [DT] with . . . Father by identifying necessary, appropriate and reasonable services to address the identified safety issues (problems), and making referrals for these services."

Although Dr. Hay did not recommend services to address Father's domestic violence and anger management issues specifically, despite her opinion that these problems posed a safety concern, the substantial evidence shows that DHS recommended anger management and domestic violence services, which Father participated in; but Father did not demonstrate an ability to apply what he had learned.

Moreover, the family court's termination of Father's parental rights primarily was based on Father's alcohol-use disorder which in turn created safety issues for parenting DT. To the extent the court took into consideration Father's domestic violence and anger management problems, it was as a symptom of his alcohol-use disorder.

Father maintains that DHS failed to provide a 2013 multi-disciplinary team (MDT) report to the court, as required by HRS § 587A-18(c) (Supp. 2015),[5] and Father's medical records from Queen's Medical Center to the MDT at an MDT meeting on August 18, 2015. However, Father does not argue that he was prejudiced by these omissions, and considering the record as a whole, it does not appear that any prejudice resulted; therefore, any error was harmless.

1c. The Family Court did not err in finding that Father's November and December, 2015 relapses from alcohol sobriety posed a risk of harm to DT, and FOF 100, 111, 112, and 137[6] are not clearly erroneous. Substantial evidence at trial

---

[5]  HRS § 587A-18(c) provides, "[t]he department or other authorized agencies shall submit to the court each report, in its entirety, pertaining to the child or the child's family that has been prepared by a child protective services multidisciplinary team or consultant."

[6]  FOF 100, 111, 112, and 137 provide:

> 100.  Dr. Franson's [sic] testified that she had no concerns for Fathers [sic] parenting ability if he remains sober.  However her testimony that Father's November 2015 and December 2015 relapses do not place [DT] at risk because an occasional drink is not harmful is not credible or consistent with Father's long history with alcohol use, his housing situation and lack of family or other support to care for [DT] at [DT's] young age should Father have alcohol, drug or other mental health relapses.
>
> . . . .

(continued...)

showed that Father was unable to sustain remission from his alcohol-use disorder, with his latest relapses occurring once within each of the two months preceding trial; he had not demonstrated that he could circumvent "triggers" for his alcohol use; alcohol caused him to become aggressive; and his aggressiveness posed safety concerns for DT.

We decline to review the Family Court's determinations regarding Dr. Franson's credibility regarding the risk posed by Father's relapses. See Child Support Enforcement Agency v. Doe, 98 Hawai'i at 65, 41 P.3d at 727.

2a. The Family Court did not err in denying Father's motion to continue after he was arrested on the first day of trial. There is no indication that Father's arrest prevented him from assisting in his defense, substantially impaired his ability to defend himself, or rendered him unfit to proceed with trial.

2b. Father does not explain why the Family Court was wrong or demonstrate how he was prejudiced by the Family Court's decision to sustain DHS's objection to questions posed to Dr. Franson as to whether Father's mental health problems presented a safety concern related to Father caring for DT. As the State notes, it appears Dr. Franson does not have expertise

---

[6](...continued)

111. Due to Father's inability to refrain from the use of alcoholic beverages, that is triggered by stress and that has resulted in Father's unhealthy behavior, based on the credible evidence and drawing all reasonable inferences, it is reasonable to conclude that ordinary parenting stressors will trigger Father's consumption of alcoholic beverages, thereby placing [DT] at risk for harm.

112. Even if Father were given more visits, and had participated in a hands-on parenting education program, it would not make any difference because of Father's continued use of alcoholic beverages, and his failure to recognize his problems.

. . . .

137. [Dr. Franson] is a credible witness as to certain matters. However the Court places less weight to her testimony regarding Father's failure to abstain from alcohol and concommitmant [sic] ability to provide a safe home given his history and actions throughout [DT's] life.

(Format altered.)

in the area of child protection or child custody. Moreover, considering the record, it does not appear that any prejudice resulted from the ruling in light of the substantial evidence showing that Father's mental health problems, particularly his inability to maintain sobriety, created a safety concern. Therefore, any error on the part of the court was harmless.

3. Father contests FOF 81, which provides that "Father returned to Oahu in an attempt to reunite with Mother in March, 2013." However, he does not actually argue this point, and it is thus waived. See Hawai'i Rules of Appellate Procedure Rule 28(b)(7) ("Points not argued may be deemed waived.").

Therefore, IT IS HEREBY ORDERED that the Family Court of the First Circuit's May 6, 2016 Order Terminating Parental Rights is affirmed.

DATED: Honolulu, Hawai'i, December 14, 2016.

On the briefs:

Herbert Y. Hamada,
for Father-Appellant.

Robert T. Nakatsuji,
Julio C. Herrera,
Jay K. Goss, and
Patrick A. Pascual,
Deputy Attorneys General,
for Petitioner-Appellee.

Presiding Judge

Associate Judge

Associate Judge

6